## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| Nicholas Dodge Bruesch, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 3:13-cv-50 |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Brandi Netolicky, Lyle Mee, and Paul Belisle, | ) | |
| Defendants. | ) | |

Plaintiff Nicholas Dodge Bruesch ("Bruesch") submitted two proposed orders directing the defendants to show cause why a preliminary injunction and temporary restraining order should not be issued.[1] (Doc. #11, Doc. #14). Bruesch also filed a declaration (Doc. #12), a document with no heading (Doc. #13), a "Memorandum in Support of Order to Show Cause" (Doc. #15), and a second declaration (Doc. #16).[2] The court filed an order stating that the two proposed orders would be considered by the court as a motion for an order to show cause why a preliminary injunction should not be issued. (Doc. #28). The court directed the defendants to file a response. Id. The defendants have responded to the motion (Doc. #32) and Bruesch has filed a reply (Doc. #35).

---

[1] The Clerk of Court filed the documents as a motion for a preliminary injunction, a motion for temporary restraining order, and a motion for an order to show cause. (Doc. #11, Doc. #14).

[2] The Clerk of Court filed the documents as an affidavit regarding the motions for a preliminary injunction and for a temporary restraining order (Doc. #12), a supplement to the motions for a preliminary injunction and for a temporary restraining order (Doc. #13), a memorandum in support of the motion for an order to show cause (Doc. #15), and an affidavit regarding the memorandum in support of the motion for an order to show cause (Doc. #16).

## Summary of Recommendation

Bruesch has not met his burden of demonstrating that he is entitled to injunctive relief under Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). It is **RECOMMENDED** that Bruesch's motion for an order to show cause why a preliminary injunction should not be issued (Doc. #11, Doc. #14) be **DENIED**.

## Background

Bruesch filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants have denied him access to the courts. (Complaint, Doc. #10). On April 2, 2013, Bruesch was transferred from the North Dakota State Penitentiary ("NDSP") to the James River Correctional Center ("JRCC"), but his personal property and legal materials were not transported with him. Id. at p. 3. Defendants contend the legal materials were "inadvertently left at NDSP," but ultimately the materials were delivered to Bruesch on April 23, 2013. (Aff. of Mee, Doc. #33, pp.1-2). Bruesch disagrees that his legal materials were "'inadvertently' left at NDSP." Instead, he contends his materials were confiscated at NDSP several weeks before his transfer to JRCC, and leaving them behind was "a calculated action." (Reply Brief, Doc . #35, pp. 3-4).

When Bruesch first arrived at JRCC he was placed within the Special Assistance Unit (SAU) which "provides services to inmates whose unique needs or mental health problems lead to disruptive or otherwise problematic behavior serious enough to endanger the safety and security of the inmate, prison population, and/or staff." (Aff. of Mee, Doc. #33, p. 2). Defendants assert "Bruesch displayed aggressive behavior" upon arriving at JRCC which "made visits to the law library a safety and security risk." Id. Although Bruesch disputes that he was a

security risk upon his arrival at JRCC, he does note that his behavior improved within three days after his arrival. (Reply Brief, Doc . #35, p.5).

Bruesch contends that on April 23, 2013, the day he received his legal materials, Attorney Douglas Bahr, who represents other state defendants in another action Bruesch has pending before this court, see Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83, contacted the SAU Unit at JRCC, and restrictions were then placed on Bruesch's access to legal materials and the law library at the JRCC. (Complaint, Doc. #10, at pp. 4-5). Bruesch contends that he missed deadlines and could not file proper documents in his other pending federal action because he had no access to legal materials. Id. at p. 5.

Defendants assert they did allow the law librarian to visit Bruesch with no time limits and provide him with requested legal materials. (Aff. of Mee, Doc. #33, p. 2). Starting in June 2013 Bruesch was allowed access to the law library at designated times and for specific durations. Id. Bruesch admits he is currently allowed 1.5 hours of law library time per day, including use of the law library computer. (Doc. #12-1).

Nevertheless, Bruesch contends that certain books are not allowed out of the law library, so during the time he was prevented from going to the law library, he did not have access to those resources, and it would take several weeks to receive the books he had requested. (Reply Brief, Doc. #35, at p. 6). The parties seem to agree that the law library computer was not updated until September 5, 2013, so Bruesch did not have access to the computer until then. (See Aff. of Mee, Doc. #33, p. 3; Reply Brief, Doc. #35, pp. 5-6). Bruesch contends that until he acquired access to the computer he did not have the ability to conduct "proper research." (Reply Brief, Doc. #35, pp. 5-6). He also contends he has been forced to choose between recreation time and

3

visiting the law library on several occasions. Id. at p. 6. Finally, Bruesch states he is forced to wear restraints when utilizing the computer, which makes it "burdensome" to take notes, and the limited access prevents him from filing "proper motions." Id. at p. 7. Defendants, on the other hand, state Bruesch can receive additional time in the law library if needed and if staffing is sufficient; he can also speak with the law librarian upon request; and he has never been forced to choose between exercise and visiting the law library. (Aff. of Mee, Doc. #33, p. 3).

In Bruesch's motion for an order to show cause why a preliminary injunction should not issue and the supporting documents he states defendants have "retaliated against him" by placing restrictions upon him and are involved in "a 'campaign of harassment' against him."[3] (Doc. #11, p. 4). Bruesch contends that the Warden has threatened to transfer him to a different facility if he continues to file grievances, and that he has been subjected to excessive force.[4] (Doc. #13, pp. 1-2). Bruesch states he has "suffered harm by not being able to file correct motions and memorandums" and he "may lose his lawsuit." (Doc. #11, pp. 1-2). Bruesch requests that the defendants be enjoined from (1) restricting his access to the law library including the amount of time Bruesch can spend in the library and how and when he can visit with the law librarian, (2)

---

[3] Bruesch does not allege in his complaint that the defendants retaliated against him. Rather, he seems to indicate in his motion and supporting documents that the reason his law library access was restricted was because the defendants were retaliating against or harassing him.

[4] Bruesch alleges a claim of excessive force in his other pending civil case before this court. See Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83, Doc. #19, Second Amended Complaint. The court presumes Bruesch is simply referring to the claim in his other case, and is not attempting to allege an excessive force claim in this case because he does not allege such a claim in his complaint, and he does not allege that the named defendants in this case used excessive force. Additionally, the court notes that the Warden is not a defendant in this action.

making him choose between recreation time and using the law library, and (3) retaliating against him.[5] (Doc. #11, p. 2; Doc. #14, pp. 1-2).

## Law and Discussion

In considering whether to grant a preliminary injunction, the court must consider the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase, 640 F.2d at 113. "The party seeking injunctive relief bears the burden of proving all the Dataphase factors." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)).

**1.      Irreparable Harm**

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citations omitted). Although no factor is determinative, Dataphase, 640 F.2d. at 113, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," Watkins, 346 F.3d at 844.

---

[5] The court presumes that Bruesch's request that the defendants cease retaliating against him is really the same as his request that they not restrict his access to the law library, since Bruesch has not alleged any way in which the defendants have retaliated against him other than restricting his access, and Bruesch has not alleged a claim of retaliation in his complaint.

Bruesch contends that he may lose his lawsuit due to the restrictions on his legal materials. (Doc. #11, pp. 2-4). He also states he is forced to wear restraints when using the law library computer which is "burdensome." (Reply Brief, Doc. #35, p. 7). Bruesch has not met his burden of demonstrating an irreparable injury is likely. Bruesch's statement that he may lose his lawsuit is conclusory, speculative, and not sufficient to demonstrate irreparable harm. See Winter, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)); Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir.1995) (Possible or speculative harm is not sufficient.). Additionally, the court notes it is undisputed that Bruesch currently receives 1.5 hours of access to the law library per day, and he can receive additional time. (Doc. #12-1). Bruesch has not alleged any other harm that he may suffer should the court not issue a preliminary injunction, and his failure to demonstrate irreparable harm is by itself a sufficient ground to deny Bruesch's motion.

**2.    Balance of the Harms**

Bruesch has not established he would suffer irreparable harm if an injunction is not issued. On the other hand, mandating that Bruesch have unlimited access to the law library would be an intrusion by the court into the administration of the JRCC. "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676

F.2d 1211, 1214 (8th Cir. 1982)). The defendants have legitimate safety, security and resource concerns that favor reasonably limiting an inmate's access to a prison law library.

**3.      Likelihood of Success on the Merits**

"[P]risoners have a constitutional right of access to courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). An inmate who alleges a violation of access to the courts is required to show actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). Bruesch contends that the delay in receiving his legal materials when he was transferred to the JRCC and the restrictions on his access caused him to miss deadlines in his other case pending before this court. (Doc. #10, p. 5; Reply Brief, Doc. #35, p. 35). Bruesch also states he could not "file proper motions, memorandums, and supporting documents" because of his lack of access to legal materials. Id.; see also Doc. #11, p. 3; Reply Brief, Doc. #35, p. 7.

The court takes judicial notice of the docket in Bruesch's other case pending before this court. The court cannot identify any deadlines missed by Bruesch. See Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83. Defendants in that action filed a motion for summary judgment on February 8, 2013. Id. at Doc. #55. Bruesch requested and received an extension of the deadline to respond to the defendants' motion. Id. at Doc. #59, Doc. #60. The court extended the deadline for Bruesch to respond to the motion a second time after the defendants advised the court that not all of Bruesch's property was transferred to the JRCC, and that Bruesch would receive his legal materials on April 23, 2013. Id. at Doc. #70. The court allowed Bruesch until June 1, 2013, to respond to the defendants' motion for summary judgment. Id. Bruesch filed his response on May 24, 2013. Id. at Doc. #79. There have been numerous motions filed in that action, including approximately nineteen filed by Bruesch, and it appears all deadlines have been met by Bruesch.

7

Additionally, Bruesch has not identified any motions that he was prevented from filing or how any of his pleadings were lacking in substance due to his restricted access to legal materials. Given the information presently before the court, it is unlikely that Bruesch would succeed on the merits of his claim of denial of access to the courts because he has not demonstrated actual injury.

**4.      Public Interest**

There is a public interest in protecting the constitutional rights of inmates. However, there is also a public interest in ensuring the security and safety of the inmates and staff at the JRCC, and in providing for the efficient use of the facility's resources. Given the specific circumstances of this case, including that Bruesch's behavior was either aggressive or questionable for at least the first couple of days at the facility,[6] and that the other Dataphase factors weigh in favor of denying injunctive relief, the court's intervention into the administration of the JRCC is not warranted.

**Conclusion**

All of the Dataphase factors weigh in favor of denying injunctive relief. Accordingly, it is **RECOMMENDED** that plaintiff's motion for an order to show cause why a preliminary injunction should not be issued (Doc. #11, Doc. #14) be **DENIED**.  It is further **RECOMMENDED** that Bruesch's request that the  motion remain pending so he can secure evidence to demonstrate that the defendants have "falsified statements" in their pleadings (Reply

---

[6] See Doc. #35, p. 5 (Bruesch states that three days after he arrived at the facility his behavior was "good enough" so that he could receive recreation time.).

Brief, Doc. #35, p. 8) be **DENIED**. Bruesch can submit evidence in support of his underlying claim that he was denied access to the courts in conjunction with a dispositive motion or at trial.

Dated this 21st day of February, 2014.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation and by filing with the Clerk of Court no later than **March 6, 2014**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.