# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Nicholas Dodge Bruesch, | ) |
|       Plaintiff, | )    Case No. 3:13-cv-50 |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Brandi Netolicky, Lyle Mee, and Paul Belisle, | ) |
|       Defendants. | ) |

Plaintiff Nicholas Dodge Bruesch ("Bruesch") submitted three proposed orders directing the defendants to show cause why a preliminary injunction and temporary restraining order should not be issued.[1] (Doc. #44, Doc. #58, Doc. #67). Despite the titles of the proposed orders, it is clear Bruesch seeks a preliminary injunction. See Id. Bruesch previously sought a preliminary injunction in this action, and the court denied his request. (Report and Recommendation, Doc. #36; Order adopting Report and Recommendation, Doc. #46). The court refers to the entire record in considering the instant motions.

## Summary of Recommendation

Bruesch has not met his burden of demonstrating he is entitled to injunctive relief under Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). It is **RECOMMENDED** that Bruesch's requests for a preliminary injunction (Doc. #44, Doc. #58. Doc. #62, Doc. #67) be **DENIED**.

---

[1] The Clerk of Court filed the documents as a motions for orders to show cause, for preliminary injunctions, and for temporary restraining orders. (Doc. #44, Doc. #58, Doc. #62, Doc. #67).

**Background**

Bruesch filed a complaint pursuant to 42 U.S.C. § 1983 alleging defendants have denied him access to the courts. (Complaint, Doc. #10). His complaint alleges (1) he was denied his legal materials when he first arrived at the James River Correctional Center ("JRCC"), and (2) that since Bruesch's arrival at JRCC his access to legal materials and the law library has been restricted. Id. at pp. 3-6. Bruesch contends he missed deadlines and could not file proper documents in another action that was before this court because he had restricted access to legal materials. Id. at p. 5.

On April 2, 2013, Bruesch was transferred from the North Dakota State Penitentiary ("NDSP") to JRCC, but his personal property and legal materials were not transported with him. Id. at p. 3. Defendants contend the legal materials were "inadvertently left at NDSP," but ultimately the materials were delivered to Bruesch on April 23, 2013. (Aff. of Mee, Doc. #33, pp.1-2). Bruesch disagrees that his legal materials were "'inadvertently' left at NDSP." Instead, he contends his materials were confiscated at NDSP several weeks before his transfer to JRCC, and leaving them behind was "a calculated action." (Doc . #35, pp. 3-4).

When Bruesch first arrived at JRCC he was placed within the Special Assistance Unit (SAU) which "provides services to inmates whose unique needs or mental health problems lead to disruptive or otherwise problematic behavior serious enough to endanger the safety and security of the inmate, prison population, and/or staff." (Aff. of Mee, Doc. #33, p. 2). Defendants assert "Bruesch displayed aggressive behavior" upon arriving at JRCC which "made visits to the law library a safety and security risk." Id. Although Bruesch disputes he was a security risk upon his arrival at JRCC, he notes his behavior improved within three days after his arrival. (Doc . #35, p.5).

In support of his pending requests for a preliminary injunction Bruesch provided the court with a JRCC Case Note authored by defendant Lyle Mee. (Aff. of Bruesch, Doc. #57). Bruesch contends the Case Note demonstrates he did not display aggressive behavior upon his arrival at the facility. Id. The Case Note is dated the day after Bruesch arrived at JRCC. (Case Note, Doc. #57-1). The case note states the following:

> Bruesch was transferred from NDSP for what appeared to be aggressive behavior towards staff. He signed for hi[s] SAU/JRCC handbooks and received his contact information. He expressed a lot of interest in working with staff, getting a behavior plan put together and working his way through SAU. He is concerned with getting his mail. He stated he has not received it for quite some time because of his behavior. He had appealed some level III reports and want[s] to make sure he doesn[']t run out of time to appeal them further if need be. He voiced no other concerns at this time.

Id.

Bruesch states that on April 23, 2013, the day he received his legal materials, Attorney Douglas Bahr, who represented other state defendants in another action Bruesch had pending before this court, see Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83,[2] contacted the SAU at JRCC, and restrictions were then placed on Bruesch's access to legal materials and the law library at JRCC. (Complaint, Doc. #10, at pp. 4-5). Bruesch contends he missed deadlines and could not file proper documents in his other federal action because he had restricted access to legal materials. Id. at p. 5.

Defendants assert they allowed the law librarian to visit Bruesch with no time limits and provided him with requested legal materials. (Aff. of Mee, Doc. #33, p. 2). Starting in June 2013 Bruesch was allowed access to the law library at designated times and for specific durations. Id.

---

[2] Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83, is currently on appeal before the Eighth Circuit Court of Appeals.

Bruesch admits he was allowed 1.5 hours of law library time per day, including use of the law library computer.³ (Doc. #12-1).

Bruesch contends in his recent motions that he is again being prohibited access to the law library. (Doc. #44, p. 2). He states that because he is denied access to the law library, law computer, and "necessary law books," he lost his case in Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83. Bruesch states he could not properly research the case and lost "due to lack of argument." (Doc. #59, p. 2). Bruesch also states he has been unable to research the cases cited by defendants in this action because of the inadequacy of the law library. (Doc. #65, p. 6).⁴

Defendants state that Bruesch's access to the law library is dependent upon his behavior. (Doc. #69. p. 5). Defendants allege that on February 21, 2014, Bruesch attempted to assault a staff member in the SAU. (Aff. of Mee, Doc. #50-1, p. 1). On February 23, 2014, Bruesch threw a lunch tray at an officer. Id. at p. 2. On February 28, 2014, Bruesch grabbed the coat of a

---

³ The parties seem to agree that the law library computer was not updated until September 5, 2013, so Bruesch did not have access to the computer until then. (See Aff. of Mee, Doc. #33, p. 3; Doc. #35, pp. 5-6)

⁴ Additionally, Bruesch avers that on March 20, 2014, and on March 21, 2014, he was forced to choose between recreation time and visits with the law librarian. (Doc. #65, p. 3). However, Bruesch stated in a later motion for a preliminary injunction, that the "issue has since been resolved." Id. at p. 9. Bruesch submitted an inmate grievance form stating an officer, not named as a defendant in this action, gave Bruesch the choice between meeting with the law librarian and receiving recreation time. (Doc. #59-3). In response, Bruesch was advised that future meetings with the law librarian would be scheduled as to not interfere with Bruesch's recreation time. Id. Bruesch provided the court with the information in an effort to demonstrate that Lyle Mee lied about the issue in an affidavit previously submitted to the court. (See Doc. #59, p. 9) (Bruesch contends Lyle Mee gave a "false statement" to the court which is "perjury."). Bruesch fails to recognize that the affidavit submitted by Lyle Mee was dated before the two incidents in March. (See Aff. of Mee, Doc. #33, p.3) (Lyle Mee stated on January 22, 2014, that Bruesch "has never been forced to choose between exercise and visiting the law library.").

sergeant and tried to "pull the sergeant into his cell through the tray door." Id. Also, on March 4, 2014, Bruesch threatened and attempted to head butt defendant Lyle Mee. Id. After the attempted assault on February 21, 2014, Bruesch was required to have his hands restrained behind his back while out of his cell in order to ensure the safety of everyone at JRCC, and because of the restraints Bruesch could not use the computer in the law library. Id. at p. 2.

Bruesch denies he threw a tray at an officer, grabbed the coat of a sergeant, or made threats to defendant Lyle Mee. (Doc. #52; Aff. of Bruesch, Doc. #54, p. 2). Bruesch maintains that defendant Mee used excessive force against Bruesch on March 4, 2014, by grabbing Bruesch's arm and throwing him to the ground. (Doc. #45). However, Bruesch has not denied defendants' allegations that Bruesch attempted to assault an officer on February 21, 2014, or that he tried to head butt defendant Lyle Mee on March 4, 2014.

During the relevant period of time defendants assert Bruesch was allowed to have his legal work and pencils in his cell, he was able to see the law librarian upon request, there was no limit to the amount of time Bruesch could see the librarian, Bruesch saw the librarian on February 26, 2014, and he refused to see the librarian on March 4, 2014, after the librarian came to Bruesch's cell at Bruesch's request. (Aff. of Mee, Doc. #50-1, pp. 2-3). Bruesch admits he met with the law librarian on February 26, 2014 and on March 20, 2014. (Aff. of Bruesch, Doc. #54, p. 2; Aff. of Bruesch, Doc. #55). However, Bruesch asserts he does not get unlimited visits with the law librarian, the visits are not of unlimited time duration, the law librarian lacks the knowledge to meaningfully assist Bruesch, the law librarian is not allowed to file documents on Bruesch's behalf, the law library has very few and outdated law books, and without access to the computer in the law library Bruesch is essentially denied access to the courts. (Aff. of Bruesch,

5

Doc. #54, p. 2; Aff. of Bruesch, Doc. #55; Doc. #65). Bruesch notes the law librarian is not a lawyer, but admits the law librarian "can give advice and try to help find legal research materials if available." (Doc. #65, p. 5).

In defendants' response to Bruesch's most recent motion for a preliminary injunction, defendants state that Bruesch is allowed access to the law library when Bruesch's behavior is appropriate. (Doc. #60, p. 5). Defendants note that three weeks prior to filing the response, Bruesch was at the law library three separate times. Id. However, when Bruesch was aggressive towards staff, he was required to have his hands restrained behind his back, and because of the requirement he was not allowed to go to the law library, but he was allowed visits with the law librarian. Id. After Bruesch acts out aggressively toward staff, he is required to display three days of appropriate behavior before the restraints will be placed in the front. Id. When the restraints are in the front Bruesch can have access to the law library. Id. Defendants also note in their response that "Bruesch has not complained to the staff of SAU of being denied law library access for quite some time." Id. Bruesch did not file a reply to defendants' response.

Bruesch seeks an order enjoining defendants from (1) using excessive force,[5] (2) prohibiting Bruesch from using the law library, (3) subjecting Bruesch to different standards than other inmates and treating him worse than other inmates,[6] (4) denying Bruesch "access to case law" and "adequate law books," (5) denying Bruesch access to the courts, (5) retaliating against

---

[5] As noted above, Bruesch alleges defendant Lyle Mee used excessive force against him. (Doc. #45, pp. 1-2).

[6] Bruesch contends Lyle Mee has failed to meet with him on a regular basis as required, and has directed other staff members to not help Bruesch. (Doc. #59, p. 10-11).

6

Bruesch,[7] (6) ignoring Bruesch's medical needs,[8] and by (8) manipulating Bruesch and "displaying sadistic actions against [him]."[9] (Doc. #44, Doc. #58, Doc. #67).

## Law and Discussion

"[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (citation omitted). Bruesch's claims in his complaint are that he was denied his legal materials when he arrived at JRCC, and since that time he has been denied access to the law library and legal materials. Bruesch has not raised claims in his complaint regarding excessive force, unequal treatment, retaliation, harassment, medical needs, or anything related to defendants being manipulative or sadistic. These new claims cannot provide the basis for a preliminary injunction in this case. See Id. Accordingly, it is **RECOMMENDED** that Bruesch's motions be denied with respect to the new claims.

---

[7] Bruesch alleges that Lyle Mee retaliated against him. (Doc. #59-2). He contends that Lyle Mee has led a "campaign of harassment against him" and all of Lyle Mee's actions, including but not limited to refusing to speak to Bruesch, telling other staff not to help Bruesch, not giving Bruesch "treatment that is part of the special needs unit," and manipulating Bruesch into having his family send money which was then taken from Bruesch, have been in retaliation for Bruesch filing the instant action. (Doc #59, pp. 10-12; Doc. #60, pp. 2-4). Bruesch states that defendant Brandi Netolicky has retaliated against him by not allowing him to have access to the law library and legal materials and by requiring that Bruesch's hands be restrained behind his back on a long term basis. (Doc. #67; Doc. #68, p. 2). Bruesch states that defendants Lyle Mee and Brandi Netolicky have harassed him and retaliated against him "to the point [Bruesch] is fearful for his life . . . ." (Doc. #65, p. 2). Finally, Bruesch states he has been harassed by Sergeant Koble, who is not a defendant in this action. (Doc. #68, pp. 6-7)

[8] Bruesch has not identified any medical needs that were allegedly ignored by defendants.

[9] Bruesch contends that Lyle Mee manipulated him into having his family send money, and when the money arrived it was taken from him. (Doc. #50, p. 11). Bruesch does not say who took the money, but presumably Bruesch had a balance due on his inmate account.

The court now turns to Bruesch's access to the court claims. In considering whether to grant a preliminary injunction, the court must consider the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase, 640 F.2d at 113. "The party seeking injunctive relief bears the burden of proving all the Dataphase factors." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)).

**1.    Irreparable Harm**

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citations omitted). Although no factor is determinative, Dataphase, 640 F.2d. at 113, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," Watkins, 346 F.3d at 844.

Bruesch contends that with several pending cases he needs "sufficient legal materials." (Aff. of Bruesch, Doc. #55, p 3). Bruesch states that without access to the law library and the computer he is unable to respond to defendants' motions, research the cases cited by defendants, and research cases in support of Bruesch's motions. (Doc. #59, p. 6; Doc. #65, p. 2; Doc. #68, p. 7). The court notes that in this action defendants have not filed any motions, Bruesch has filed several motions, and Bruesch has cited case law in support of his motions.

8

Bruesch has not met his burden of demonstrating an irreparable injury is likely. Bruesch's statements that his legal research will be compromised without access to the law library computer are conclusory, speculative, and not sufficient to demonstrate irreparable harm. See Winter, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)); Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir.1995) (Possible or speculative harm is not sufficient.). It is undisputed that Bruesch has access to the law library and the computer when his behavior allows. When Bruesch's behavior is aggressive and he is prohibited from the law library, Bruesch has access to the law librarian who according to Bruesch can give advice and help find legal materials. (Doc. #65, p. 5). Bruesch has not alleged any irreparable harm that he may suffer should the court not issue a preliminary injunction, and his failure to demonstrate irreparable harm is by itself a sufficient ground to deny Bruesch's motions.

**2.      Balance of the Harms**

Bruesch has not established he would suffer irreparable harm if an injunction is not issued. On the other hand, mandating that Bruesch have unlimited access to the law library would be an intrusion by the court into the administration of the JRCC. "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676

9

F.2d 1211, 1214 (8th Cir. 1982)). The defendants have legitimate safety, security and resource concerns that favor reasonably limiting an inmate's access to a prison law library.

**3.     Likelihood of Success on the Merits**

"[P]risoners have a constitutional right of access to courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). An inmate who alleges a violation of access to the courts is required to show actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996)."To prove actual injury, [plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (quoting Casey 518 U.S. at 354).

Bruesch contends in his complaint that the delay in receiving his legal materials when he was transferred to JRCC and the restrictions on his access caused him to miss deadlines in Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83. (Doc. #10, p. 5). Bruesch also states he could not "file proper motions, memorandums, and supporting documents" because of his lack of access to legal materials. Id. In Bruesch's documents in support of his recent motions seeking preliminary injunctions, Bruesch contends he has had several motions denied because of "inadequate arguments." (Aff. of Bruesch, Doc. #54, p. 4; Aff. of Bruesch, Doc. #55, p. 3). Bruesch also states he lost his case in Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83, because of his "lack of argument." (Doc. #59, p. 6).

The court takes judicial notice of the docket in Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83. The court cannot identify any deadlines missed by Bruesch. See Bruesch v. Flanagan, D.N.D. Case No. 1:12-cv-83. Defendants in that action filed a motion for summary judgment on February 8, 2013. Id. at Doc. #55. Bruesch requested and received an extension of the deadline to respond to the defendants' motion. Id. at Doc. #59, Doc. #60. The court extended

10

the deadline for Bruesch to respond to the motion a second time after the defendants advised the court that not all of Bruesch's property was transferred to JRCC, and that Bruesch would receive his legal materials on April 23, 2013. Id. at Doc. #70. The court allowed Bruesch until June 1, 2013, to respond to the defendants' motion for summary judgment. Id. Bruesch filed his response on May 24, 2013. Id. at Doc. #79. A Report and Recommendation was issued on March 17, 2014, recommending that defendants' motion for summary judgement be granted and that Bruesch's complaint be dismissed with prejudice. (Doc. #120). Bruesch filed a motion for an extension of time to object to the Report and Recommendation. (Doc. #122). His motion was granted (Doc. #124), and on April 24, 2014, Bruesch filed a timely objection. (Doc. #125).

There have been numerous motions filed in that action, including at least twenty filed by Bruesch, and it appears all deadlines have been met by Bruesch. Additionally, Bruesch has not identified any motions that he was prevented from filing, how any of his pleadings were lacking in substance due to his restricted access to legal materials, or identified any arguments he was prevented from making in the case. Bruesch has not demonstrated how his restricted access to the law library and the computer hindered his efforts to pursue his claims, and he has not set forth specific facts showing how the restricted access caused him to lose the case. Given the information presently before the court, it is unlikely that Bruesch would succeed on the merits of his claim of denial of access to the courts because he has not demonstrated actual injury.

4. **Public Interest**

There is a public interest in protecting the constitutional rights of inmates. However, there is also a public interest in ensuring the security and safety of the inmates and staff at JRCC, and in providing for the efficient use of the facility's resources. Given the specific circumstances

of this case, including that Bruesch's behavior has been aggressive or questionable,[10] and that the other Dataphase factors weigh in favor of denying injunctive relief, the court's intervention into the administration of JRCC is not warranted.

**Conclusion**

All of the Dataphase factors weigh in favor of denying injunctive relief and it is worth mentioning again that Bruesch can have access to the law library and computer when his behavior is appropriate. Additionally, Bruesch's claims not raised in his complaint cannot provide the basis for a preliminary injunction in this case. It is **RECOMMENDED** that Bruesch's motions seeking a preliminary injunction (Doc. #44, Doc. #58. Doc. #62, Doc. #67) be **DENIED**.

Dated this 9th day of September, 2014.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation and by filing with the Clerk of Court no later than September 26, 2014, a

---

[10] Bruesch has not denied defendants' allegations that Bruesch attempted to assault an officer on February 21, 2014, or that he tried to head butt defendant Lyle Mee on March 4, 2014. Additionally, the Case Note submitted by Bruesch demonstrates his behavior was aggressive prior to his arrival at JRCC, and Bruesch admits his behavior was at least questionable for a few days after he arrived at the facility. (See Case Note, Doc. #57-1; Doc. #35, p. 5) (Bruesch states that three days after he arrived at JRCC his behavior was "good enough" so that he could receive recreation time.).

pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.